No. 32,523

The Central Trust Company, Trustee, *Appellant*, v. R. B. Temple et al. (The R. B. Investment Company), *Appellees*.

Opinion filed December 7, 1935.

*Dean McElhenny* and *Philip C. Gault*, both of Topeka, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris*, all of Wichita, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: No. 32,440, *The Kansas City Life Insurance Company v. Anthony*. This case and the other four cases enumerated in ·the heading of this opinion will be considered together, as they all involve the same main legal question as to the validity and binding force of chapter 226 of the Laws of 1935, being the last of the four acts known as the moratorium acts of the legislature of Kansas, passed during the years 1933, 1934 and 1935.

The dates and other facts in these five cases are slightly different, but not sufficiently so as to change the application of them under the moratorium law. None of the parties in these cases are interested in more than one of the cases. The cases all involve interests of different parties, come from different counties, have been tried by different judges and are here represented by different attorneys. We will consider under the heading of this first-entitled and numbered case the arguments, reasons and citations of authorities as contained in the briefs in all five of these cases.

They are all mortgage foreclosure cases in which judgments were rendered against the defendants, and an eighteen-month period of

redemption was granted defendants after the date of each sheriff's sale, and no appeal was taken in any of them from such judgments. In all of the cases the moratorium law was held to be constitutional and period of redemption was extended in all of the cases but one to January 15, 1937, and the plaintiff in each case appealed from such ruling. In none of the cases was the feature of the existence of an emergency proved or disproved, but it was apparently left and considered as stated in the preamble or in the body of the acts themselves.

While we are concerned especially with the last of the moratorium acts, as it is the only one now, or at the time of the last ruling of the trial court in any of these cases, which covers or covered the extended period in question, yet the four acts are definitely coupled together so as to constitute a continuous and unbroken period from March 21, 1933, to January 15, 1937, a period of three years, nine months and twenty-five days.

The first one of such laws, enacted March 21, 1933, was an automatic legislative extension of the period of redemption for six months from March 4, 1933, to September 4, 1933, followed by an authorization of a further extension of six months, or to March 4, 1934, by the governor of the state, which was so extended by the governor, but such further extension has been held by this court to have been a delegation of legislative power which rendered that part of the act unconstitutional and the extension thereunder void and inoperative. (*Oakland State Bank v. Bolin,* 141 Kan. 126, 40 P. 2d 437; and *Langworthy v. Kadel,* 141 Kan. 250, 40 P. 2d 443.)

The next act was chapter 3 of the Laws of 1934 (Special Session), which became effective March 3, 1934, and which provided for an extension of the period of redemption in cases where, as provided by law and as extended by the two branches of the act of 1933, the period of redemption had not expired, the court might deem it just and equitable to grant such extension, but not beyond March 1, 1935.

The third act, being chapter 225 of the Laws of 1935, effective January 16, 1935, was an automatic legislative extension of the period of redemption. It was described in the title of the act, as well as in the body thereof, as an amendment of the act of 1934, and in the first section thereof it was connected up with both parts of the act of 1933 and the extension was to March 1, 1935.

The fourth and last act is chapter 226 of the Laws of 1935, which

in the first part of the second section thereof connected and coupled itself up with the last two acts above described as a continuation of the extensions authorized or granted by these acts, and, as in the 1934 act, authorized the district court to extend the period of redemption as it deemed just and equitable, but in no event beyond January 15, 1937. This act was to become effective March 1, 1935, and specifically provided in section five that "This act as to redemption from sales on mortgage foreclosure shall apply only to mortgages made prior to March 21, 1933."

Each of the last three acts contained a thirty-day automatic extension within the final periods of extension, and they also contained provisions for the courts ascertaining and imposing reasonable rental charges upon the mortgagor while in possession of the mortgaged premises during such extensions.

All these acts, either in the preamble or the body of them, base the granting of such extensions upon existing emergencies, which puts to a test the meaning of that word when extended over a period of nearly four years.

In this particular case the petition in foreclosure was filed July 6, 1932, the petition showing that no interest had been paid since September 19, 1931, and no taxes had been paid since 1930. Judgment was entered by default on September 10, 1932, and period of redemption fixed at eighteen months from date of sale. No appeal was taken from this judgment. Sheriff's sale was had on October 15, 1932, at which time the property was bid in by the plaintiff for the full amount of the judgment, interest, taxes and costs. The period of redemption would expire April 15, 1934. The sale was confirmed October 19, 1932. On April 3, 1934, the district court granted an extension of the period of redemption under the act of 1934 until March 1, 1935. No appeal was taken from that order. On March 8, 1935, defendants filed a motion for further extension under the second act of 1935 to January 15, 1937. This was resisted by plaintiff, but on March 23, 1935, the court extended the period of redemption to January 15, 1937, and established a rental value. From this order the plaintiff has appealed.

The third act, or chapter 225 of the Laws of 1935, is the only one of the four acts which appears to be an amendment of any other act and to repeal the former act, in compliance with the constitutional requirement in that particular (section 16, article 2 of the constitution of Kansas), and it amends and repeals section 2 of chapter 3

of the Laws of 1934 Special Session. None of the other three acts attempt to repeal or amend any other law by any specific reference thereto. The last act, chapter 226 of the Laws of 1935, states in the first part of section five thereof that "Every law and all the provisions thereof now in force insofar as inconsistent with the provisions of this act, are hereby suspended until January 15, 1937." No authorities, constitutional or otherwise, are cited in any of these five cases for legislative suspension of former legislation, other than by amendment and repeal, with which there was no attempted compliance in any but the one instance.

But we are more concerned with the legal question of the power of the legislature to suspend or abrogate the judgments or decrees of courts. It is urged in support of these laws and the orders made by the district courts extending the redemption periods, that courts already had inherent power and authority in equity cases to extend periods of redemption, citing *Quinton v. Adams,* 87 Kan. 112, 123 Pac. 740, where it was said:

"Instances are many in which courts have extended the period of redemption. In *Neef v. Harrell,* 82 Kan. 554, 109 Pac. 188, this court ordered the time extended, and indeed we can see no reason why a court expressly vested with equitable powers should be called upon, not only to see that a creditor receives every cent that is due him, but also to permit the debtor to suffer a great and unnecessary sacrifice in addition to making such full satisfaction." (p. 115.)

This authority, as stated in the opinion, is based upon what is now R. S. 60-3463, which concerns the authority of courts to confirm sheriff's sales and make orders as to the issuing of sheriff-sale certificates and sheriff's deeds. The same rule was followed in *Piatt v. Flaherty,* 96 Kan. 42, 149 Pac. 734, and other cases. If courts of equity already had inherent power and authority to make such extensions, the enactment of moratorium laws might not be necessary for the exercise of such power, especially when in two of the four laws, above described, full power was given to the court to exercise the same within certain definite limitations as to time—the other two extending the period automatically by legislative declarations.

The courts of Kansas have long had not only such inherent power to remedy wrongs by subsequent orders, but have had statutory authority to correct mistakes and irregularities as provided in R. S. 60-3007, 60-3009, 60-3010 and other sections. It was held in *Martin*

*v. Miller,* 97 Kan. 723, 156 Pac. 709, and *Marsh v. Votaw,* 102 Kan. 747, 172 Pac. 30, both concerning mistakes as to the period of re-demption in foreclosure cases, that the statutory rules and provisions must be observed in making any such corrections or modifying judgments or orders already made by the court.

This brings us to the most important question in all five of these cases as to the force and effect of a statute which directly or indirectly attempts to nullify, modify or set aside a judgment of the court or any of the terms of a judgment rendered before the passage of the act. This court held in *Greenwood v. Butler,* 52 Kan. 424, 34 Pac. 967, as to the 1893 redemption act which increased, in the regular manner by amendment and repeal, the period of redemption in foreclosure cases from six months to eighteen months, that—

"Chapter 109 of the Laws of 1893, concerning the sale and redemption of real estate, does not have the effect to change or nullify any of the terms of a judgment duly rendered before the passage of that act, directing the sale of lands, or any interest therein, for the purpose stated in said judgment." (Syl.)

It was further held in the opinion—

". . . that judgments rendered prior to the passage of the act are not affected by it, and that all sales of land under such judgments must be made in accordance with their terms, and will pass such estates as are thereby ordered to be sold." (p. 431.)

This ruling was followed and approved in the case of *Sheldon v. Pruessner,* 52 Kan. 593, 35 Pac. 204.

In *Watkins v. Glenn,* 55 Kan. 417, 40 Pac. 316, and *Beverly v. Barnitz,* 55 Kan. 451, 40 Pac. 325, it was held that the new act had no retroactive operation. In the opinion rendered upon the rehearing of the last-named case, 55 Kan. 466, 42 Pac. 725, a distinction was made at page 488 between the facts therein and those in the Greenwood case, adhering to the ruling in the Greenwood case where it applied to a judgment rendered before the new law was enacted, and emphasized the fact that in the Beverly case the new law became effective after the execution of the mortgage and after the beginning of the foreclosure action but before the rendition of the judgment foreclosing the mortgage.

Some of the appellees in support of the orders of extension rendered in these cases insist that the original order as to the sale of the property encumbered and the allowance of the eighteen-months period of redemption is no part of the judgment proper, and have cited the following from 33 C. J. 1051:

"A judgment is the sentence of the law upon the ultimate facts admitted by the pleadings or proved by the evidence. It is not a resolve or decree of the court, but the sentence of the law pronounced by the court upon the action or question before it."

Under the same general heading it is also provided:

"A judgment is the end of the law. Its rendition is the object for which jurisdiction is conferred and exercised. It is the power by means of which a liability is enforced against the debtor's property."

So we think under these definitions that part of the order of the court which has reference to the enforcement of the liability against the debtor's property is as much a part of the judgment as the conclusion of the amount of the indebtedness itself, although these orders are sometimes made in connection with the confirmation of the sale.

The finality and validity of judgments is well expressed in 6 R. C. L. 162, as follows:

"Since the legislature does not possess and may not assume the exercise of judicial powers, it cannot interfere in any way with pending judicial controversies. Therefore the legislature cannot annul or set aside the final judgment of a court of competent jurisdiction, or take particular cases out of a settled course of judicial proceedings, or grant a rehearing or appeal after the parties to a final judgment have lost the right to any further hearing, or set aside the judgments of courts, or revive judgments which have expired, or grant new trials, . . . or direct the steps which shall be taken in the progress of a judicial inquiry."

Some of the citations to texts consider a judgment in the nature of a contract and thus bring it under the constitutional inhibition as to the violation of the obligation of a contract.

Section 711 of volume 2 of Freeman on Judgments, 5th edition, is cited and urged as a ground for fixing the validity of the order of the court in extending the period of redemption under the act of 1934, but that citation concludes with a circumstance which is not applicable here, and that is as to the rights of the parties in a subsequent action. This is the same action, and the argument is made that because no appeal was taken from the order of the court extending the period of redemption under the former law, it is final and *res judicata*, and therefore cannot be disturbed by any action taken in this court under the last 1935 law, but if the failure to take an appeal from an order made under the 1934 law makes that order or judgment final, what does the failure to take an appeal from the rendition of the original judgment do with reference to that judg-

ment being *res adjudicata* when no appeal was taken? At any rate we are now and here considering whether the last order made by the trial court under chapter 226 of the Laws of 1935 can extend the period of redemption from March 1, 1935, to January 15, 1937. A similar matter was heard and considered in the United States district court of this district as to the moratorium act of 1934, and the following is a part of the opinion by Judge Pollock in the case of *Phoenix Joint Stock Land Bank v. Dewey*, 8 F. Supp. 678, at page 679:

"On the facts above stated, all the orders, decrees, and proceedings taken or had in the foreclosure suit were made in conformity to the law in force at the time they were made and entered, at which time the mortgage moratorium law of the state of March, 1934, did not apply because not then enacted and in existence; hence could not therefore be made applicable. Now, the said orders and decrees, when and since entered, became the law of the case, absolute and binding on the parties to the suit, as the same have not been appealed from, reviewed, or modified as between the parties; they are the law of the case to this day, and cannot now be changed or set aside by any power known to man. Under the valid orders of the court, the holder of the certificate of purchase is entitled to a deed of conveyance of the land, and the special master is bound by the valid order of this court to make and deliver such deed. No act of the legislature, of the state, if so attempted, can or could operate to change the law of the case. Under this law, the rights and obligations of the parties became fixed beyond all change. . . .

"To uphold and enforce the mortgage moratorium law of this state, passed after the rights of these parties had been finally settled by orders and decrees, as against this fixed and settled law of this case, would be in direct conflict with the settled law of both the state and the nation, would be unconstitutional and void as against the fundamental law of the land and the absolute rights of the parties as determined before the act of the legislature relied upon was enacted."

The appellees strongly rely upon the case of *Home Bldg. & L. Assn. v. Blaisdell*, 290 U. S. 398, 78 L. Ed. 413, 54 S. Ct. 231, where the United States supreme court held the Minnesota moratorium statute constitutional, which declared the existence of an emergency and authorized the courts of that state to extend the period of redemption to a date not beyond May 1, 1935. The mortgage in that case was dated August 1, 1928. The foreclosure sale was made on May 2, 1932. Under the existing law at the time of the sale the period of redemption expired May 2, 1933. The new law was enacted April 18, 1933, about two weeks before the original period of redemption expired. On the general proposition of the new law being constitutional and retroactive in character as to the mortgage

contract, the opinion might be very forcible, but while the Minnesota law was made to cover foreclosure judgments, that feature was not involved in the case decided. The foreclosure was by advertisement and not by judgment, as in all the cases at bar and as it must be in all foreclosure cases in Kansas. There was therefore nothing in the Blaisdell case, *supra,* concerning a judgment of the court not being *res adjudicata,* and nothing concerning the power of a subsequent act of the legislature to direct the courts to annul or set aside such previously rendered judgments.

The opinion emphasizes the necessity of the relief afforded the debtor by the extension being temporary only and to meet an existing emergency. The temporary character of the extensions may properly be considered in connection with the total of nearly four years covered by the four Kansas acts, even if the trial courts did impliedly accept the preambles to the acts as common knowledge of the existence of an emergency.

Three subsequent decisions have been rendered by the same court, in which the Blaisdell case has been distinguished. One was the case of *Louisville Joint Stock Land Bank v. Radford,* 55 S. Ct. 854, where the court held the Frazier-Lemke congressional bankruptcy act to be unconstitutional, and one of the distinctions was the five-year period allowed the bankrupt to retain possession of the property with an option to purchase it at appraised or reappraised value subject to payment of reasonable rental fixed by the court, comparing that with the two-year period in the Blaisdell case, *supra,* and with the authority given the court to reduce the two-year period. Another one was that of *W. B. Worthen Co. v. Thomas,* 292 U. S. 426, 78 L. Ed. 1344, 54 S. Ct. 816, being an appeal from the Arkansas supreme court involving the validity of a state statute enacted subsequent to a garnishment judgment, which statute exempted the property that had been garnished, and the court compared the facts with those in the Blaisdell case and found a wide distinction, holding that in the Arkansas case "the relief sought to be afforded is neither temporary nor conditional."

In the case of *W. B. Worthen Co. v. Kavanaugh,* 55 S. Ct. 555, the validity of a state statute extending the time of redemption for the owner of city lots sold to pay assessments thereon to meet interest and principal on city bonds issued for street improvements, where this and two other acts greatly extended the time required

in foreclosing the defaulting owner's interest in the lots and increased his period of redemption from six months to four years, was coupled with a declaration of an emergency, which was stated to endanger the peace, health and safety of a multitude of citizens. The statute was held unconstitutional, and in the opinion, after distinguishing the case from the facts in the Blaisdell case, it was said:

"A different situation is presented when extensions are so piled up as to make the remedy a shadow. . . . What controls our judgment at such times is the underlying reality rather than the form or label. The changes of remedy now challenged as invalid are to be viewed in combination with the cumulative significance that each imparts to all. So viewed they are seen to be an oppressive and unnecessary destruction of nearly all the incidents that give attractiveness and value to collateral security." (p. 557.)

The case of *Des Moines J. S. L. Bk. v. Nordholm*, 217 Ia. 1319, 253 N. W. 701, is cited and urged as in line with the Minnesota case, and it upheld the Iowa moratorium law even against a judgment rendered nearly a year before the enactment of the statute extending the period of redemption for nearly two years. In affirming the judgment of the trial court the supreme court of Iowa held the law to be constitutional and added that it was proper for the district court of Boone county to extend the time of redemption to March 1, 1935, but that judgment must be modified to the extent that if the emergency passes before that time, then the appellant shall have the right to have the order for the extension changed.

The case of *Russell v. Battle Creek Lumber Co.*, 265 Mich. 649, 252 N. W. 561, is cited, and it follows the Blaisdell case.

Some of the appellees cite the case of *Frazier v. Ford*, 138 Kan. 661, 27 P. 2d 267, in support of the contention that appellants here are estopped from attacking the validity of the last redemption law because of a decision rendered in the same case upon motion as to prior moratorium acts, from which decision no appeal was taken. We think this case and others cited with it are not applicable here, as there does not appear in the cases at bar to be any of the necessary elements of estoppel. As far as the want of appeal from the adverse ruling sustaining the motion for an extension under one of the three earlier moratorium acts is concerned, that decision, right or wrong, would not allow or disallow the debtor a further extension under the last moratorium act, and it is under the period of extension given in that act that the appellees are claiming, and it is the only period now remaining.

We are not willing to yield the unbroken record of this court and most other courts in favor of the judgment of a competent court of record being *res adjudicata* and not subject to annulment or being set aside by a subsequent act of the legislature, even on the theory of the existence of an emergency, especially when that emergency is a continuation of four consecutive ones culminating in a total extension period of nearly four years.

The judgment in this case is reversed.

No. 32,487, *Provident Mutual Life Insurance Company v. Oliver.* Judgment on the petition in foreclosure in this case was rendered April 4, 1932, and period of redemption was fixed at eighteen months from date of sale. Sheriff's sale was had on May 9, 1932, at which time the property was bid in by the plaintiff for the full amount of the judgment, interest, taxes and costs. Period of redemption was to expire November 9, 1933. The sale was confirmed May 9, 1932. On April 2, 1934, motion was filed to extend the period of redemption to March 1, 1935, under the act of 1934. This motion was granted May 10, 1934. On March 11, 1935, defendants filed a motion for further extension under the second act of 1935 to January 15, 1937. This was resisted by plaintiff, but on March 27, 1935, the court extended the period of redemption to January 15, 1937, and established the rental value. From this last order the plaintiff has appealed. What has been said in the first case above applies with equal force to the facts above stated, and an additional feature is found in these facts, namely, that the period of redemption had expired during the extension period declared by the governor and before any attempt was made by defendants to have the court grant an extension under subsequent provisions.

The judgment in this case is reversed.

No. 32,492, *Union Central Life Insurance Co. v. Nye.* The petition in foreclosure in this case was filed March 17, 1932. Judgment was rendered April 21, 1932, and the period of redemption was fixed at eighteen months from date of sale. The journal entry shows no interest had been paid since October 1, 1930, and no taxes had been paid for the years 1930 and 1931. Sheriff's sale was had on June 8, 1932, at which time the property was bid in by the plaintiff for the full amount of the judgment, interest, taxes and costs. Period of redemption was to expire December 8, 1933.

The sale was confirmed July 11, 1932. On April 18, 1934, the district court granted an extension of the period of redemption under the act of 1934 until March 1, 1935. On March 18, 1935, defendants filed a motion for further extension under the second act of 1935 to January 15, 1937. This was resisted by plaintiff, but on April 8, 1935, the court extended the period of redemption to January 15, 1937, and established a rental value. From this order the plaintiff has appealed.

There are no new or different matters involved in this particular case from those in the preceding cases.

This is one of the cases, above mentioned, where estoppel was argued and urged, and we think it does not apply here.

The judgment in this case is reversed.

No. 32,493, *New York Life Insurance Co. v. Smith.* The petition in foreclosure in this case was filed April 6, 1933. Judgment was rendered June 5, 1933, for $10,088.66, and period of redemption was fixed at eighteen months from date of sale. The journal entry shows the taxes had not been paid for the year 1932. Sheriff's sale was had on July 19, 1933, at which time the property was bid in by the plaintiff for $10,326.21, the return showing the amount of taxes unpaid. The period of redemption was to expire January 19, 1935. Motion to confirm the sale was promptly filed, but the sale was not confirmed until June 29, 1934. On January 3, 1935, the district court granted an extension of the period of redemption under the act of 1934 until March 1, 1935. On February 28, 1935, defendants filed a motion for further extension under the second act of 1935 to March 1, 1936. This was a mistake, and on April 5, 1935, the court permitted the defendants to amend the motion by asking for an extension to January 15, 1937, instead of March 1, 1936, and on the same day granted the motion to extend the period of redemption to January 15, 1937, and established a rental value. From this order the plaintiff has appealed.

The main difference between this case and the first case discussed in this opinion is in the fact that the judgment had not been rendered when the first moratorium act became effective. However, nothing was done under that act, but as the regular period of redemption did not expire until January 19, 1935, the application for extension was made January 3, 1935, under the 1934 act. Then later, and within time, another motion was made and granted under

the second 1935 act. The judgment having been rendered before the passage of the 1934 act, the same reasoning had in the first case above applies except as to the total length of time included in the new extensions, which is about one year less. We think in general the same rule should apply.

The judgment in this case is reversed.

No. 32,523, *Central Trust Co. v. Temple.* The petition in foreclosure in this case was filed January 8, 1932. Judgment was rendered March 10, 1932, and the period of redemption was fixed at eighteen months from date of sale. The land included in the mortgage was in three counties, but we are here only interested in the facts concerning the land in Greenwood and Butler counties. The case was filed and tried in Butler county. Sheriff's sale of this land was on May 3, 1932, at which time it was sold to the plaintiff for the full amount of the principal, interest and costs. Sale was confirmed on May 1, 1932. The eighteen-months period of redemption expired November 3, 1933. This was during the governor's extension and quite a while before the enactment of 1934. The period was extended on motion of defendants under the act of 1934 on April 10, 1934, to March 1, 1935. Then on April 8, 1935, it was extended under the second act of 1935 to March 1, 1936, and the rental value was established. The plaintiff appeared by attorney and opposed both of these motions and appealed from the ruling on the second motion.

The facts in this case are similar to those in the first case above discussed as far as the judgment having been rendered before the enactment of any of the four moratorium laws. The extension under the second 1935 law was not to the extreme limit as in the other cases, but only to March 1, 1936, which shortens the total cumulative extension period as thus far appropriated in this case by about ten and one half months.

The failure of the plaintiff to appeal from the adverse ruling on the first motion and the matter of estoppel have heretofore been considered, and the views expressed in this opinion concerning the same we think apply here.

The failure to use the full period of extension allowed will not in itself affect the validity of the act nor the right thereunder to annul or set aside a judgment rendered prior to its enactment.

The judgment in this case is reversed.

Dawson, J. (concurring): I have no doubt that the state of Kansas enjoys such attributes of sovereignty as authorize it to enact valid moratorium legislation. Our statute of 1893 (R. S. 60-3439), which granted to a judgment debtor in a mortgage foreclosure suit a period of eighteen months in which to redeem his property from sale in foreclosure is an excellent example of that sort of legislation. And its constitutionality is unassailable in its prospective application, although its retrospective aspects were stricken down by the United States supreme court in *Barnitz v. Beverly,* 163 U. S. 118, 41 L. Ed. 93, 16 S. Ct. 1042. Indeed, I hold a tentative opinion that a Kansas court of general jurisdiction in a proper case could take judicial cognizance of such an emergency as that mentioned in the preamble to chapter 226 of the Laws of 1935; and under such unusual and distressing circumstances, in the exercise of its broad equity powers, might postpone judgment or the time in which a judgment should take effect, without the particular sanction of our present moratorium enactments of 1933, 1934, and 1935.

In the fourteenth amendment, however (as well as in our own bill of rights), the constitution of the United States declares that no state shall make or enforce any law which will deprive any person of his property without due process of law.

Due process of law is the regular and orderly procedure prescribed in advance by legislative enactment for the adjudication of the rights and liabilities of litigants. Once adjudicated to a finality, those rights are vested beyond legislative control. In the notable case of *McCullough v. Virginia,* 172 U. S. 102, 123, 42 L. Ed. 382, 390, 19 S. Ct. 134, the supreme court of the United States said:

"It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases."

No brief submitted for our perusal—no case cited for our instruction—assails or attempts to overthrow this simple but fundamental principle of American jurisprudence. It clearly governs the disposition of the cases under present review.

Mr. Justice Smith joins in the foregoing special comment of Mr. Justice Dawson.

HARVEY, J. (dissenting): I decline to give my consent to the view that the decree of a court in a foreclosure action, as to the period of redemption named therein, is so immovable and unchangeable (whether on the ground of *res judicata*, or any other ground) as to prevent the court, by a later order, from extending the time for redemption if a situation (an emergency) arose which, as the court views it, makes such action equitable between the parties; or so as to prevent the legislature (because of an emergency it finds to exist) from enacting a statute authorizing the courts to give further consideration to periods of redemption in a foreclosure action, if a party applies for it, and to extend the period for a limited time upon terms which are equitable between the parties. This is all chapter 226 of the Laws of 1935 attempts to do.

Neither can I give my consent to the view, which appears to dominate the opinion as written, that judicial action is so much superior to legislative action. Just as sometimes happens with persons who occupy other governmental units, those of the court occasionally acquire an exaggerated opinion of their own authority or power. Statements embodying such views have been written in the law books, some of which are cited and relied upon in the opinion of the court in this case. However, there is an abundance of other authorities setting forth another, and to my mind, a sounder view. Our government is founded on the view that judicial and legislative powers are coördinate. This equality of authority should be maintained unless the doing so would of itself disrupt our governmental structure—the fundamental reason justifying courts in holding a particular legislative act not to be authorized by the constitution. The financial depression has caused the legislatures of many states to enact moratorium statutes pertaining to a variety of subjects. The validity of many of these never was questioned in the courts, and most of those questioned have been sustained by the courts, even when they affected prior judicial decrees.

More than that, so far as our state is concerned, all governmental power was originally vested in the people, and is still vested in them, except that a part of it has been surrendered to the federal government, and in part they have restricted its exercise by their own constitution. But neither the state nor federal constitution places the judicial branch of the government on a higher plane than the legislative; they are coördinate. If in time of an emergency or catastrophe, local or extended over a wide area, temporary or other-

wise in duration, in order to maintain the lives or health of the people, or to enable them to engage in useful industry, the people find it necessary to suspend for a time the operation of some branch or unit of the government, I have no doubt there is fundamental power and authority to do so, unless such power has been given away to the federal government, or been restricted by their own constitution. The act we have under consideration (Laws 1935, ch. 226) does not attempt to go anything like this far. All it attempts to do is to give authority to the courts of the state, in that class of foreclosure actions of which they still have jurisdiction because sheriff's deeds have not been issued, to consider the question of further extending the period of redemption for a limited time, but requiring the court, if that is done, to do so upon terms equitable between the parties. I see nothing seriously wrong in that. There are some details of this statute which might render it invalid, but since they have not been treated in the opinion of the court I shall not discuss them here.

It is my opinion that each of the five cases disposed of by this opinion should be treated separately instead of being grouped as one (the same should be done as to other cases submitted at the same session of the court); that the statute in question (Laws 1935, ch. 226) should be treated as a valid exercise of legislative power, unless the court can say as a matter of law that legislative declaration of an emergency is not in accord with existing conditions, and that the question which should be considered and determined in each case separately is whether the order made by the trial court, in view of the facts of that case, is equitable as between the parties.

The press of other work makes it impossible for me to write more extensively upon the subject, even if I thought it would serve any useful purpose to do so.

BURCH, C. J., dissenting.

## MEMORANDUM

The cases listed below involve validity of the 1935 moratorium law. While the facts differ in details from the facts in case No. 32,440, *Kansas City Life Insurance Co. v. Theodore Anthony et al.*, and companion cases this day decided, the controlling legal questions are the same in all the cases. Therefore, pursuant to the decision in case No. 32,440, judgments of reversal are entered in the following appealed cases:

No. 32,437. The Mutual Building and Loan Association v. Roy E. Davis, Sheriff of Lyon County, Kansas. (Charles B. Taylor, Intervener.) Original proceeding in mandamus. Writ allowed.

No. 32,459. The Prudential Insurance Company of America v. Henry Sallee and Nancy I. Sallee. Appeal from Marion county.

No. 32,465. Phoenix Joint Stock Land Bank of Kansas City v. Matthew E. Brown et al. Appeal from Edwards county.

No. 32,474. Phoenix Joint Stock Land Bank of Kansas City v. James Hosford and Anna L. Hosford. Appeal from Brown county.

No. 32,475. Phoenix Joint Stock Land Bank of Kansas City v. John F. Oltjen, as Sheriff of Brown County. Appeal from Brown county.

No. 32,506. Phoenix Joint Stock Land Bank of Kansas City v. George Roggendorff et al. Appeal from Dickinson county.

No. 32,510. Prudential Insurance Company of America v. James Vaughan et al. Appeal from Jackson county.

No. 32,511. Citizens Building and Loan Association v. Robert Stanton et al. Appeal from Lyon county.

No. 32,515. Union Central Life Insurance Company v. Robert E. Ward et al. Appeal from Leavenworth county.

No. 32,516. Phoenix Joint Stock Land Bank of Kansas City v. James A. Belden et al. Appeal from Smith county.

No. 32,526. Farm Mortgage Holding Company v. E. B. Robertson et al. Appeal from Cheyenne county.

No. 32,554. Farm Mortgage Holding Company v. Cleve W. Carter et al. Appeal from Comanche county.

No. 32,556. Equitable Life Assurance Society of New York v. Charley Sickelbower et al. Appeal from Butler county.

No. 32,557. Ancient Order of United Workmen of Kansas et al. v. Orrin E. Rippetoe et al. Appeal from Coffey county.

No. 32,564. Union Central Life Insurance Company v. Harry C. Sturdivan et al. Appeal from Woodson county.

No. 32,566. Farm Mortgage Holding Company v. James L. Blodgett et al. Appeal from Mitchell county.

No. 32,567. Farm Mortgage Holding Company v. James E. Irvine, as Sheriff of Leavenworth County, Kansas. Appeal from Leavenworth county.

No. 32,568. Farm Mortgage Holding Company v. Stella M. Wingrove and Roy A. Wingrove et al. Appeal from Leavenworth county.

No. 32,583. Farm Mortgage Holding Company v. Samuel C. Diggle et al. Appeal from Kearny county.

No. 32,587. John Hancock Mutual Life Insurance Company v. Audrey D. Reid et al. Appeal from Lyon county.

No. 32,588. Mutual Building and Loan Association v. Frances C. Taylor et al. Appeal from Lyon county.

No. 32,591. Citizens Building and Loan Association v. G. C. Foster et al. Appeal from Lyon county.

No. 32,596. Phoenix Joint Stock Land Bank of Kansas City v. Martin King et al. Appeal from Phillips county.

No. 32,733. Phoenix Joint Stock Land Bank of Kansas City v. Edgar L. Runyan et al. Appeal from Montgomery county.